BLANCA C. et al., Respondents, v COUNTY OF NASSAU et al., Appellants, et al., Defendants.

Second Department, October 22, 1984

APPEARANCES OF COUNSEL

*Edward G. McCabe, County Attorney* (*Joshua A. Elkin* of counsel), for appellants.

*Joachim, Flanzig, Weissman & Wm. Beasley, Jr.* (*Edward B. Joachim* and *Jeffrey S. Lisabeth* of counsel), for respondents.

### OPINION OF THE COURT

GIBBONS, J. P.

The issue raised on this appeal is whether foster parents may properly be regarded as employees of the county which has committed infants to their care, for the purpose of imposing vicarious liability upon said county and its Department of Social Services for injuries inflicted upon the children by said foster parents. In our view, this question must be answered in the negative.

In 1972, the Nassau County Bureau of Children's Services removed the infant plaintiffs from the care and custody of their natural mother, Carmen M., and shortly thereafter committed them to the care of the individual defendants, Ferdinando and Gemma Del Valle, as foster parents. Approximately five years later, the placement with the Del Valles was abruptly terminated, apparently due to allegations of sexual abuse on the part of the foster father against the eldest child, a girl. In fact, in subsequent proceedings before the Family Court, Mr. Del Valle admitted "on [the] advice of counsel" that between January 1, 1977 and April 9, 1977, he had disrobed in front of the eldest child, "removed her pajama pants and fondled her private parts", while Mrs. Del Valle admitted that she had "failed to prevent" such abuse from occurring. The instant action was thereafter commenced, *inter alia*, on behalf of the foster children against the Del Valles, the County of Nassau and the Nassau County Department of Social Services. In the underlying complaint the plaintiffs asserted various causes of action against the Del Valles individually for negligent and intentional mistreatment, and against the County of Nassau and its Department of Social Services (hereinafter referred to collectively as the County) for negligent selection of foster parents and negligent supervision of the foster home. Thus, as against the County, the complaint alleges: "That Defendants, COUNTY OF NASSAU AND NASSAU COUNTY DEPARTMENT OF SOCIAL SERVICES were reckless, careless and negligent in that they failed and omitted to exercise reasonable care in selecting foster parents and a foster home and in administering their foster care program and in supervising the foster parents and foster home situation; failed and omitted to employ adequately skilled personnel to investigate the entire foster home situation, including the foster parents and to select a proper environment, administer the same and supervise the same, all with the direct result that Plaintiff was kicked, beaten, subjected to mistreatment, neglect, injury, indignity, [and] obscenities all at the hands of the foster parents, FERDINANDO DEL VALLE and GEMMA DEL VALLE; failed and omitted to interview the foster children, foster parents and the natural mother of the children although Defendants knew, or should have known in the

exercise of reasonable care, that the foster home environment and foster parents were neglectful, were likely to mistreat and maltreat their charges and subject them to indignities, obscenities, sexual abuse, beatings, malnutrition and other diverse forms of maltreatment and mistreatment; failed and omitted to place the infants in a reasonably safe and wholesome foster home environment; and Defendants were otherwise reckless, careless and negligent in the premises."

At the ensuing trial, the children testified to a series of outrageous incidents which were allegedly perpetrated upon them by the Del Valles, which included, *inter alia,* several instances of corporal punishment with a belt or a strap, being forced to consume food which they previously regurgitated, having dog excrement pushed into their faces and mouths, and, with regard to the oldest child, various instances of sexual abuse by the foster father. Naturally, much of the testimony also concerned the existence of actual or constructive notice to the County of these alleged acts of gross misconduct, since the gravamen of the complaint as against the County was negligence in the selection of foster parents, and in the administration and supervision of its foster care program insofar as it related to these infants. Notwithstanding the fact that this was the sole theory of governmental liability upon which the case was tried, the court proceeded to charge the jury, essentially *sua sponte,* that for the purpose of providing foster care, the Del Valles were to be regarded as employees of the County, thereby rendering the County vicariously liable for their acts. Accordingly, the court, over the County's exception, charged the jury as follows:

"The infant plaintiffs also have claimed against the defendants, the County of Nassau and as you know, the Department of Social Services. In considering these claims you must consider the acts of the County's employees and I charge you that the defendant Del Valles are to be considered by you as County employees, along with Mrs. Rimland and others employed by the County.

"With respect to the acts of the County employees, it must be explained that an employer is not responsible for

the act of his employee unless the act is in furtherance of the employer's business and within the scope of the employee's authority.

"An act is within the scope of an employee's authority if it is performed while he or she is engaged generally in the business of his or her employer, to which he or she was assigned, or if his or her act may be reasonably said to be necessary or incidental to such employment. The employer need not have authorized the specific act in question.

"Now, if you find the defendants, Del Valle, or other County employees within the scope of their authority and in the furtherance of the defendant, County's business, of caring for these children, negligently caused injury to the plaintiffs, you will hold the defendant, County, responsible for such acts, even though you find that an employee's act was reckless or willful, the employer is nonetheless responsible for the act, if you find that it was performed in furtherance of the employer's business and within the scope of the employee's authority."

The court then proceeded to instruct the jury on the approach to be utilized in reaching a verdict, and gave them a number of specific questions to answer. The pertinent part of these instructions is set forth below:

"To aid in your determinations a written verdict form with questions will be submitted with spaces for each of you to record your signatures * * *

"Let me go over with you briefly the form of the written verdict. The form gives the title of the case and it says in accordance with the principles, you will take it into the jury room with you. The principles charged by the Court, *one, did either of the defendants, Del Valle, commit either battery or acts of outrageous conduct or both upon any of the plaintiffs or treat them negligently as these terms were defined for you* and there is a place for each child with a yes or no. At least five of the jurors has [*sic*] to sign if you agree, with the person dissenting.

"Now, if your answer to any part of one is yes, you go on to question number two. If your answer to all of question one is no, you then go to question number three. You will understand why.

*"Question number two, if your answer to question number one is yes, go on to question number two. It says; is the defendant, County of Nassau, liable for any of the acts of the defendants, Del Valle, with respect to each one of the children.* You have a yes and a no for each one of the children.

"Question number three, after question number two you go on to number three. You go on to number three if you had a yes in one and you go on to number three even if there is [*sic*] all no answers.

*"Question number three;* was the County of Nassau *otherwise* negligent and if so, was its negligence a proximate cause of the injuries suffered by any of the plaintiffs. You have all three children there. Yes or no is to be answered and you have five out of six of you must decide.

"Now, if your answers to question number one, two and number three are no, you stop your deliberations and you report to the Court because you have found a verdict in favor of the defendants.

"If your answer to any question was yes, you must go on to the question of damages as to any of the defendants you have found at fault." (Emphasis supplied.)

Insofar as is here relevant, the jury returned a verdict answering the first two questions in the affirmative and the third question in the negative, whereupon judgment was entered in favor of the infant plaintiffs and against the defendants in the combined principal amount of $285,000. This appeal followed.

In our view, the judgment should be reversed insofar as appealed from by deleting the imposition of liability against the County.

We begin by considering the nature of the liability imposed upon the defendant County in accordance with the charge. The jury was instructed (1) that the plaintiffs had asserted various causes of action against the Del Valles individually sounding, *inter alia,* in battery and negligence; (2) that the Del Valles were "employees" of the County of Nassau for the purposes of this lawsuit in their rendition of foster care; (3) that an employer is vicariously liable for the acts of his employees committed within the scope of their employment; (4) that the County could there-

fore be held vicariously liable for the acts of the Del Valles committed within the scope of their "employment" as foster parents; and (5) that the County could also be subjected to liability for its individual acts of negligence committed in the discharge of its statutory and common-law duty to exercise reasonable care in the selection and supervision of foster parents. Viewed from this perspective, the jury's affirmative response to the two interrogatories dealing with the Del Valles combined with its negative response to the third interrogatory dealing exclusively with the County can only be read as absolving the defendant County of any liability predicated upon the alleged violation of its individual duty of care to the children, and as subjecting it to liability strictly under the doctrine of *respondeat superior* as applied to the acts of the Del Valles. It is this determination which we have concluded cannot be permitted to stand, for, in our view, the trial court erred in concluding that foster parents are employees of the County for the purpose of imposing vicarious liability upon the one for the acts of the other.

In reaching its decision to instruct the jury that foster parents are employees of the County for present purposes, Trial Term purported to rely upon the decision of this court in *Bartels v County of Westchester* (76 AD2d 517), wherein we sustained the complaint of a foster child against the County of Westchester for injuries inflicted by the foster parents into whose care she had been committed by the Westchester County Department of Social Services. In our view, this reliance is misplaced.

In *Bartels v County of Westchester* (*supra*), the plaintiff, age two, had been severely injured as the result of the unfitness and/or carelessness of her foster parents in attempting to bathe her in scalding water. In the ensuing action, she alleged, through her guardian ad litem, that the County was liable for the injuries sustained at the hands of her foster parents after being placed on notice as to their incompetence or indifference in the discharge of their duties, whereupon the County moved to dismiss the complaint on the ground, *inter alia,* that "the county and its employees were immune from liability because the care of children placed with foster parents is a governmental

activity calling for day-to-day decisions of a highly sensitive and discretionary character which cannot be subjected to judicial scrutiny" (*Bartels v County of Westchester, supra,* p 520; cf. *Tango v Tulevech,* 61 NY2d 34). This court, in an opinion by Justice Hopkins, sustained the complaint based on a perceived allegation that the County had violated its independent duty to exercise reasonable care in the placement and supervision of foster children, but in no way may that decision be read as imposing vicarious liability upon the County for the acts of the foster parents committed during the period of placement. In fact, in declining to pass upon the County's contention that "foster parents are neither agents nor servants of the county, but [rather] independent contractors, for whose negligence the county would not be liable" (*Bartels v County of Westchester, supra,* p 520), we expressly indicated that the nature of the liability then under consideration was not derivative of the foster parents' activities by stating (p 523): "[I]t is clear that * * * the Legislature in accordance with the command of the Constitution has * * * cast a positive duty on the appellants to supervise the care and welfare of the infant plaintiff. That duty must be deemed to be nondelegable in the sense that the appellants are required to exercise due care in the selection of foster parents and to oversee diligently the rendition of proper care by the foster parents. *It is that duty which the plaintiff invokes, and the violation of which is the foundation of the * * * complaint*" (emphasis supplied; accord, see *Andrews v County of Otsego,* 112 Misc 2d 37, 39).

Thus, *Bartels v County of Westchester* (76 AD2d 517, *supra*) does not represent cogent authority for the proposition for which it was cited by Trial Term, nor have the parties alluded to any other authority, either within or without the State, in which vicarious liability has been imposed upon a municipality for injuries inflicted upon foster children by foster parents (cf. *Elton v County of Orange,* 3 Cal App 3d 1053; *Koepf v County of York,* 198 Neb 67; *Hanson v Rowe,* 18 Ariz App 131; see, also, Ann., 90 ALR3d 1214 [governmental tort liability for social service agency's negligence in placement, or supervision after placement of children]). In fact, in the one case which

we have discovered in which vicarious liability has been judicially imposed (*Vonner v State,* 273 So 2d 252, 256 [La]), the Supreme Court of Louisiana based its conclusion upon a prior determination that there existed, under Louisiana law, a "nondelegable" duty on the part of the State to provide for the "physical, mental, moral and emotional well-being" of foster children which precluded the Department of Public Welfare from attempting to avoid responsibility for the failure to protect such children from physical abuse by entering into foster care contracts. Notably, our own court has held that the "positive duty" imposed under New York law "to supervise the care and welfare" of foster children "must be deemed * * * nondelegable *in the sense that* the [County is] required to exercise due care in the selection of foster parents and to oversee diligently the rendition of proper care by the foster parents" (*Bartels v County of Westchester, supra,* p 523; emphasis supplied). We have gone no further. Moreover, the *Vonner* case (*supra*) is distinguishable on its facts, as the infant therein had been beaten to death by the foster mother under circumstances where there was ample evidence of notice to the State of corporal mistreatment in the foster home.

More nearly in point for present purposes is the Court of Appeals decision in *Hawley v State of New York* (22 AD2d 357, 360-361, revd 16 NY2d 809), in which the issue presented was whether "the State upon making a contract with another for [the] custodial care of a mental defective is thereby relieved from further liability even though the negligent act of the contract custodian involves subjecting the patient to a situation where it can be said that his mental defect renders him incapable of protecting himself from harm or if in this narrow area *the negligence of the custodian occurs in his capacity as agent of the State with resulting liability of the latter*" (emphasis supplied). In rejecting the Appellate Division's affirmative response to the second half of this question and the imposition of vicarious liability upon the State, the Court of Appeals wrote (16 NY2d 809, 809-810, *supra*): "The statutory relation between the State and the custodian of a patient on 'convalescent status' does not impose a liability on the State for an act of negligence of the custodian not foreseeable by the State in the exercise of reasonable care; and the

custodian is not the agent of the State in this relationship so as to impute such a liability to the State when due care is taken in the selection of the custodian (Mental Hygiene Law, former § 132; § 34, subd. 12). It seems implied in subdivision 12 that a patient on convalescent status is not a patient at the institution. The custodian of such a patient is often his family or guardian (§ 132) and no statutory distinction as to the relationship of 'agent' to the State is made between a member of the family and another suitable person selected as custodian. Reports must in either case be made to the State as to the physical, moral and mental condition of the patient, but the control of the patient is sufficiently independent from the State in detail and management as to protect the State against liability for acts of negligence not reasonably to be anticipated." (Cf. *Paige v State of New York,* 269 NY 352, cited by the Appellate Division in support of its determination but not discussed by the Court of Appeals.)

In our view, the policy considerations implicit in the *Hawley* decision (*supra*) are persuasive, for in the absence of either statute or controlling precedent, we would be hesitant to impose vicarious liability upon the County for the acts of foster parents, who are essentially contract service providers (see *Matter of Mavis M.,* 110 Misc 2d 297, 308; cf. *People ex rel. Ninesling v Nassau County Dept. of Social Servs.,* 46 NY2d 382, 389-390). In this regard, it is important to recall that the statutory and common-law predicates for liability relied on by this court in *Bartels v County of Westchester* (76 AD2d 517, *supra*) related to the County's independent duty of care in the selection and supervision of foster parents, and that it did not purport to inflict the potentially crushing financial burden which the concept of vicarious liability could conceivably impose on the public fisc. Moreover, there is always the danger that judicial imposition of vicarious liability might prompt the County to restrict or abolish its foster care program in favor of institutional placement (cf. *Hawley v State of New York,* 22 AD2d 357, 361, revd 16 NY2d 809, *supra*). Finally, in appropriate cases, the financial protection of infants will not be jeopardized by our decision, as the County will remain liable in those instances where the

breach of its duty "to exercise due care in the selection of foster parents and to oversee diligently the rendition of proper care by the foster parents" results in injury (*Bartels v County of Westchester, supra,* p 523).

Here, however, the jury has already determined that the County did not breach its independent duty of care, and the judgment, insofar as it is against it, must therefore be vacated, and the corresponding portion of the complaint dismissed.

BRACKEN, BROWN and NIEHOFF, JJ., concur.

Judgment of the Supreme Court, Nassau County, entered December 2, 1982, reversed insofar as appealed from, on the law, without costs or disbursements, the judgment insofar as it is against the County of Nassau and the Nassau County Department of Social Services is vacated and the corresponding portion of the complaint is dismissed.