OPINION OF THE COURT
Howard Miller, J.
At the close of plaintiffs’ case, defendant County of Orange (County) moves to dismiss for failure to establish a prima facie case, based upon plaintiffs’ failure to establish that the County owed them a special duty and, in particular, failed to establish direct contact between the County and the plaintiffs, a necessary prong of the four-point test enunciated in Cuffy v City of New York (69 NY2d 255).
Cuffy (supra) concerns the duty of a municipality to provide police protection to a particular citizen. Even prior to Cuffy it had long been established that a "special duty” must exist before a municipality can be held liable for failure to provide police protection in a specified instance (Sorichetti v City of New York, 65 NY2d 461), since the municipality’s duty is to the public at large and not to any particular individual or class of individuals (Moch Co. v Rensselaer Water Co., 247 NY 160).
Disparate from the duty of a municipality to provide police protection to the public at large are the positive duties imposed by statute upon the Department of Social Services (the Department) for the care and protection of children — a discrete class of individuals. Specific statutory provisions govern the care and custody of children found to be abandoned, destitute, neglected, defective or abused (Social Services Law art 6). In 1942 section 390 of the Social Services Law was enacted to provide for regulation of day care facilities. In 1964 that section was amended to regulate family home day care and to require that family home day care providers be certified by the Department. The Department was charged with the duty to issue such certificates, to monitor compliance and, if necessary, to revoke or suspend such certificates, all in accordance with the statutory authority and the rules and regulations of the Department.
Under the regulations in effect at the times Sheila Wilson was certified and recertified, the Department was required to conduct an investigation (including visits and inspection, and necessary contacts with collateral references) to review the required documentation and the provider’s plan for day care. The Department was required to conduct a Central Register of *332 Child Abuse and Maltreatment search of the applicant and any adult in the household, and to determine the health and character of the applicant and the members of the applicant’s household.
On November 15, 1988, the Department certificated Sheila Wilson as "maintaining a suitable home for the day care of children”. In making such certification, the County was obligated to carry out its duties in accordance with the prevailing statutory mandates and the applicable rules and regulations of the Department, all with due regard for the safety of the children the statutes were designed to protect (Bartels v County of Westchester, 76 AD2d 517).
In Bartels (supra), the Second Department sustained the complaint "based upon a perceived allegation that the County had violated its independent duty to exercise reasonable care in the placement and supervision of foster children” (Blanca C v County of Nassau, 103 AD2d 524, 530, affd 65 NY2d 712). The Bartels Court (at 523) held that: "the Legislature in accordance with the command of the Constitution has * * * cast a positive duty on the appellants to supervise the care and welfare of the infant plaintiff. That duty must be deemed to be nondelegable in the sense that the appellants are required to exercise due care in the selection of foster parents and to oversee diligently the rendition of proper care by the foster parents.” Bartels was reaffirmed by the Second Department in Barnes v County of Nassau (108 AD2d 50, 57-55) noting that: "The overriding weight of appellate authority in this country is in agreement that a State or its subdivisions may be answerable for injuries suffered by children as a result of negligence in the placement or supervision of children in their charge * * * Indeed, to paraphrase Voltaire, if New York did not have a Bartels, we would have to decide one.”
Applying the same concept to selection of contract providers, the Court of Appeals in Hawley v State of New York (16 NY2d 809, 809-810) held that the State may escape liability in negligence for the acts of a contract provider in the provision of custodial care to a mentally defective person only when the negligent acts were "not foreseeable by the State in the exercise of reasonable care” or "when due care is taken in the selection of the custodian”. The immunity from liability clearly did not extend to foreseeable harm resulting from lack of due care in selection of a custodian. As confirmed in Blanca C. (supra, at 532-533): "the County will remain liable in those instances where the breach of its duty 'to exercise due care in *333 the selection of foster parents and to oversee diligently the rendition of proper care by the foster parents’ results in injury.”
The Court of Appeals, in affirming the Second Department’s decision in Blanca C. (supra), declined to address the issue of an agency’s liability for negligent supervision of the foster parents’ care of the foster children, since the jury in Blanca C. had found the County liable solely on a vicarious liability theory. That issue was addressed by Harris v State of New York (117 AD2d 298) in 1986, wherein the Second Department held that the State may be held directly liable for injuries sustained by a mentally disabled individual while a resident of a State-certified family care home.
In all of the foregoing cases, the injured party was under the care of the State or one of its subdivisions, or was placed in the facility by the governmental agency. Nevertheless, in reliance on Harris, Blanca C. and Bartels (supra), the Fourth Department in 1987 in Sinkler v County of Monroe (127 AD2d 1006) held that a complaint based upon the County’s negligence in selecting and certifying a day care mother and in improperly supervising the day care home stated a cause of action.
It has also been held that issuance of a certificate of occupancy may create a special duty to those whose reliance on the certificate is foreseen (Garrett v Holiday Inns, 58 NY2d 253). Surely the issuance of a certificate attesting to a family day care home’s suitability for the care of children creates no less of a duty to the parents who rely on such a certification when placing their children in day care.
Based upon the trend exhibited in the foregoing New York case law, as well as in other jurisdictions (C.T. v Martinez, 845 P2d 246 [Utah]; Gagnon v State, 570 A2d 656 [RI]; Andrade v Ellefson, 391 NW2d 836 [Minn]; Brasel v Children’s Servs. Div., 56 Ore App 559, 642 P2d 696), it becomes apparent that when a State imposes specific duties for the care of a protected class, a special relationship is created between the governmental subdivision entrusted with the implementation and enforcement of those duties and the members of the protected class. The fact that the infant plaintiffs in this action were not placed in the day care home by the County does not mandate a different result, inasmuch as plaintiffs were members of the protected class whose reliance on the Department’s certification was reasonably foreseen. The Department certified Sheila *334 Wilson’s home as safe, and Mrs. Prasad testified that she had relied on the certification. Thus the "direct contact” element of the special relationship is satisfied (cf., White v Guarente, 43 NY2d 356).
Furthermore, the Department was well aware that the infant plaintiffs were in day care in Sheila Wilson’s home when Sheila Wilson’s certification was "closed”. Having made an administrative determination that the day care did not meet statutory criteria, and that the home was no longer in compliance with statutory requirements, the County was under a special duty to the limited class in attendance at the Wilson home to notify them that the home which it previously certified as "suitable” was, in its determination, no longer so.
The motion is denied.