[895 NYS2d 446]

Daniel J. McCabe, as Guardian ad Litem for Jacob A. Harris, Respondent, v Dutchess County et al., Appellants.

Second Department, February 2, 2010

### APPEARANCES OF COUNSEL

*McCabe & Mack, LLP*, Poughkeepsie (*Jodie M. Hanrahan* of counsel), for Dutchess County and others, appellants.

*Boeggeman, George & Corde, P.C.*, White Plains (*Daniel E. O'Neill* of counsel), for Diane Sherwood, appellant.

*Schwartz, Levine & Kaplan, PLLC*, New York City (*Jeffrey A. Kaplan* and *Ross M. Levine* of counsel), for respondent.

### OPINION OF THE COURT

LOTT, J.

In *Holodook v Spencer* (36 NY2d 35 [1974]), the Court of Appeals held that a child does not have a legally cognizable claim for damages against his parent for negligent supervision. One question presented to us in this appeal is whether a child may assert such a claim against his foster parent. We answer this question in the negative.

Factual and Procedural Background

After the infant plaintiff, Jacob A. Harris, was born in January 2004, toxicology tests revealed the presence of cocaine, opiates, marijuana, and methadone in his urine. The hospital contacted the defendant Dutchess County Department of Social Services, which caused Jacob to be placed in the home of the defendant Diane Sherwood, a certified foster care parent, while his biological mother, Taylor Harris (hereinafter Taylor), underwent treatment for drug addiction. About 16 months later,

on June 22, 2005, while alone in Sherwood's bedroom, Jacob allegedly climbed out of his sleeping accommodation onto an adjacent dresser and fell to the floor, causing him to sustain personal injuries. Taylor regained custody of Jacob shortly thereafter, and she commenced this action individually and on behalf of Jacob against Sherwood, Dutchess County, Dutchess County Department of Social Services, and the Commissioner of Social Services of Dutchess County, alleging that their negligent care and supervision of Jacob caused his injuries.

After joinder of issue and discovery, Sherwood moved, inter alia, for summary judgment dismissing the complaint insofar as asserted against her on behalf of Jacob. Dutchess County, Dutchess County Department of Social Services, and the Commissioner of Social Services of Dutchess County (hereinafter collectively the Dutchess defendants) separately moved, among other things, for summary judgment dismissing the complaint insofar as asserted against them on behalf of Jacob. In an order dated January 18, 2008, the Supreme Court, inter alia, denied those branches of the motions, and Sherwood and the Dutchess defendants now separately appeal from so much of the order as denied those branches of the motions. We reverse the order insofar as appealed from.[1]

Sherwood's Motion

In *Holodook v Spencer* (36 NY2d 35 [1974]), the Court of Appeals held that a "child does not have a legally cognizable claim for damages against his parent for negligent supervision" (*id.* at 40). Sherwood contends that a child should similarly have no claim against his or her foster parent based on negligent supervision. The question of whether a child has such a legally cognizable claim has yet to be addressed by an appellate court in this state. Nationwide, some jurisdictions that hold parents immune from suits brought by their children apply such immunity to foster parents (*see Nichol v Stass*, 192 Ill 2d 233, 735 NE2d 582 [2000]; *Mitchell v Davis*, 598 So 2d 801 [Ala 1992]; *Brown v Phillips*, 178 Ga App 316, 342 SE2d 786 [1986]), while others do not (*see Rourk v State*, 170 Ariz 6, 821 P2d 273 [1991]; *Mayberry v Pryor*, 422 Mich 579, 374 NW2d 683 [1985]). The Supreme Court, following *Andrews v County of Otsego* (112

---

**1.** After this appeal was argued, Taylor executed a judicial surrender of her parental rights. In an amended order of the Supreme Court, Dutchess County, dated September 3, 2009, Daniel J. McCabe was appointed as guardian ad litem to substitute for Taylor as Jacob's representative in this lawsuit, and he adopted the brief submitted on behalf of Jacob.

Misc 2d 37 [1982]), a prior Supreme Court decision, concluded that a child in New York may bring an action alleging negligent supervision against his foster parent. We disagree.

In *Gelbman v Gelbman* (23 NY2d 434 [1969]), the Court of Appeals abolished the defense of intrafamily immunity, a defense that had barred suits between unemancipated children and their parents to recover damages for nonwillful torts, and allowed a mother to maintain a negligence action against her unemancipated son to recover damages for injuries she sustained while a passenger in an automobile driven by the son. The Court noted, however, that in abolishing the immunity defense, it was not creating any new liabilities. Rather, it was merely permitting recovery previously barred by the intrafamily immunity doctrine (*id.* at 439).

In *Holodook* (36 NY2d at 44), the Court of Appeals clarified that the effect of *Gelbman* was only to allow suits between parents and children which would previously have been actionable between the parties if there were no family relationship, such as actions based on negligent operation of a vehicle. The *Holodook* Court declined to recognize a new cause of action, not previously recognized in New York, by a child against his or her parent based on negligent supervision (*id.* at 45-51).[2]

The *Holodook* Court explained:

> "We can conceive of few, if any, accidental injuries to children which could not have been prevented, or substantially mitigated, by keener parental guidance, broader foresight, closer protection and better example. Indeed, a child could probably avoid most physical harm were he under his parents' constant surveillance and instruction, though detriment more subtle and perhaps more harmful than physical injury might result. If the instant negligent supervision claims were allowed, it would be the rare parent who could not conceivably be called to account in the courts for his conduct towards his child, either by the child directly or by virtue of the procedures allowed by *Dole*" (36 NY2d at 45-46; *see Dole v Dow Chem. Co.*, 30 NY2d 143 [1972] [enlarging the availability of apportionment among joint tortfeasors]).

---

2. In *Smith v Sapienza* (52 NY2d 82 [1981]), the Court of Appeals, applying the same policy considerations outlined in *Holodook*, concluded that there exists no cause of action to recover damages for negligent supervision between unemancipated minor siblings.

The *Holodook* Court further noted "the difficulty of judicial delimitation, either by court or by jury, of the bounds of the asserted right to supervision. The possibilities are virtually limitless, since, as we have stated, few injuries to children could not have been avoided by closer parental supervision" (*Holodook*, 36 NY2d at 49).

These same considerations apply to foster parents, who are responsible for the around-the-clock supervision of the day-to-day activities of children under their care for extended periods of time and are required to treat the children as members of their households. As with a parent, it would be the "rare" foster parent who could not conceivably be called to account in the courts for his or her conduct towards his or her foster child if negligent supervision claims against him or her were allowed (*id*. at 45-46). The *Holodook* Court noted that

> " 'if within the wide scope of daily experiences common to the upbringing of a child a parent may be subjected to a suit for damages for each failure to exercise care commensurate with the risk—for each injury caused by inattention, unwise choice or even selfishness—a new and heavy burden will be added to parenthood' " (*id*. at 47, quoting *Cannon v Cannon*, 287 NY 425, 429 [1942]).

We decline to impose such a heavy burden on foster parents, who agree to care for children who often come from difficult backgrounds, and to whom they do not have any natural biological affinity. To impose such a burden would serve to discourage otherwise qualified and able foster parents from taking on this responsibility, notwithstanding the compensation they receive for doing so.

The plaintiff correctly notes that foster care is not intended to be permanent, and that foster parents have an obligation to attempt to solidify the relationship between the biological parent and child (*see Matter of Michael B.*, 80 NY2d 299, 309-310 [1992]). Nevertheless, foster parents are responsible for supervising the daily activities of children under their care for extended periods of time and for promoting their physical, emotional, and educational development during this time. In this case, Jacob was under Sherwood's care for about 16 months. In this sense, foster parents are unlike grandparents and other temporary custodians who "take the child for a day" (*Broome v Horton*, 83 Misc 2d 1002, 1006 [1975], *affd* 53 AD2d 1030 [1976]) and, as such, have been held to be subject to causes of action al-

leging negligent supervision (*see Zalak v Carroll*, 15 NY2d 753 [1965]; *Hadden v Kero-Sun, Inc.*, 197 AD2d 668 [1993]; *Costello v Marchese*, 137 AD2d 482 [1988]; *Barrera v General Elec. Co.*, 84 Misc 2d 901 [1975]; *Broome v Horton*, 83 Misc 2d at 1006).

Several other policy considerations discussed in *Holodook* have similar application to potential negligent supervision claims against foster parents. The *Holodook* Court concluded that vulnerability to a potential contribution claim based on negligent supervision might make an uninsured parent reluctant to bring a cause of action on behalf of his child against a third party for ordinary negligence, an effect which obviously would be detrimental to the injured child (36 NY2d at 46-47). Although a foster parent would not be expected to bring a cause of action on behalf of the child, as legal custody remains with the agency that places the child (*see Matter of Michael B.*, 80 NY2d at 309), vulnerability to negligent supervision lawsuits might discourage foster parents from reporting injuries for fear of being sued by the biological parent on behalf of the child or impleaded as a third-party defendant in an action brought on behalf of the child against a third party. The *Holodook* Court also noted "the potential for abuse of a negligent supervision claim when brought in a retaliatory context between estranged parents, one suing the other on the child's behalf, or by children estranged from their parents who could sue after reaching majority" (36 NY2d at 49). There is similarly a potential for abuse of negligent supervision claims by biological parents who may have animosity toward foster parents.

It is true that a foster parent and foster child cannot be said to be part of a "single economic unit" (*id.* at 47) in the same sense as a biological or adoptive parent and child. Thus, the *Holodook* Court's concern that the value of a child's recovery against a third party could effectively be reduced by a contribution claim against the child's parent does not apply to a child who is injured by the acts of a third party while in foster care. Nevertheless, as each of the other policy considerations outlined in *Holodook* apply to foster parents, we conclude that a cause of action by a child against his foster parent to recover damages for negligent supervision should not be recognized. We note that, as was the case in *Holodook* with respect to biological parents, our failure to recognize a cause of action by a child against his foster parent based on negligent supervision does not preclude children from bringing other tort claims against their foster parents, including those sounding in other variants

of negligence, i.e., those not arising merely by reason of the foster parent-child relationship.

Based on the foregoing, we conclude that the branch of Sherwood's motion which was for summary judgment dismissing the complaint insofar as asserted against her on behalf of Jacob should have been granted. In light of our determination, we need not reach Sherwood's remaining contentions.

The Dutchess Defendants' Motion

As for the Dutchess defendants, agencies and counties may be sued for their negligent supervision of children in foster care (*see Liang v Rosedale Group Home*, 19 AD3d 654, 655 [2005]; *Merice v County of Westchester*, 305 AD2d 383, 384 [2003]). However,

> "[i]n order to find that a child care agency breached its duty to adequately supervise the children entrusted to its care, a plaintiff must establish that the agency 'had sufficiently specific knowledge or notice of the dangerous conduct which caused injury; that is, that the third-party acts could reasonably have been anticipated' " (*Simpson v County of Dutchess*, 35 AD3d 712, 713 [2006], quoting *Mirand v City of New York*, 84 NY2d 44, 49 [1994]; *see Ogletree v Rush Realty Assoc., LLC*, 29 AD3d 875, 876 [2006]; *Liang v Rosedale Group Home*, 19 AD3d at 655).

" 'A foster care agency cannot be held liable for injuries which result to a foster child due to the momentary inattention of a foster parent, where . . . the actions of the foster parent "were not acts that should have been foreseeable by the [agency] in the exercise of reasonable care" ' " (*Ogletree v Rush Realty Assoc., LLC*, 29 AD3d at 876, quoting *Charles v City of New York*, 272 AD2d 287, 287 [2000]).

Here, although the evidence submitted by the Dutchess defendants indicated that a caseworker employed by them had observed the nature and location of Jacob's sleeping accommodation during visits to Sherwood's home, and had been informed of Jacob's attempts to climb out of his playpen, contrary to the plaintiff's contention and the conclusion of the Supreme Court, this evidence did not suggest that there was a dangerous condition on the premises or that any dangerous conduct was occurring. Thus, the Dutchess defendants established their prima facie entitlement to judgment as a matter of law (*see Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]). In

opposition, the plaintiff failed to raise a triable issue of fact (*id.*). Accordingly, the Supreme Court should have granted that branch of the Dutchess defendants' motion which was for summary judgment dismissing the complaint insofar as asserted against each of them on behalf of Jacob.

Based on the foregoing, the order is reversed insofar as appealed from, on the law, and those branches of the motion of the defendants Dutchess County, Dutchess County Department of Social Services, and Commissioner of Social Services of Dutchess County, and the separate motion of the defendant Diane Sherwood, which were for summary judgment dismissing the complaint insofar as asserted against each of them on behalf of Jacob A. Harris, are granted.

SKELOS, J.P., FISHER and LEVENTHAL, JJ., concur.

Ordered that the order is reversed insofar as appealed from, on the law, with one bill of costs payable to the appellants appearing separately and filing separate briefs, and those branches of the motion of the defendants Dutchess County, Dutchess County Department of Social Services, and Commissioner of Social Services of Dutchess County, and the separate motion of the defendant Diane Sherwood, which were for summary judgment dismissing the complaint insofar as asserted against each of them on behalf of Jacob A. Harris, are granted.