P.D. v County of Suffolk (2024 NY Slip Op 03405)

P.D. v County of Suffolk

2024 NY Slip Op 03405

Decided on June 20, 2024

Appellate Division, Second Department

Wooten, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on June 20, 2024
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

BETSY BARROS, J.P.
PAUL WOOTEN
BARRY E. WARHIT
LOURDES M. VENTURA, JJ.

2023-03941
 (Index No. 616832/20)

[*1]P.D., etc., et al., respondents, 
v
County of Suffolk, appellant, et al., defendants.

APPEAL by the defendant County of Suffolk, in an action to recover damages for personal injuries, etc., from an order of the Supreme Court (David T. Reilly, J.), dated April 6, 2023, and entered in Suffolk County. The order, insofar as appealed from, denied that branch of the motion of the defendant County of Suffolk which was for summary judgment dismissing the complaint insofar as asserted against it.

Christopher J. Clayton, County Attorney, Hauppauge, NY (Stephanie N. Hill of counsel), for appellant.
Kujawski & Kujawski (Davis & Ferber, LLP, Islandia, NY [Jennifer A. Spellman], of counsel), for respondents.

WOOTEN, J.

OPINION & ORDER
This appeal concerns the novel issue of whether a municipality is immune from liability for personal injuries allegedly sustained by a foster child during visitation supervised by a department of social services caseworker. We hold that under such circumstances, a municipality may assume a special duty to the foster child and be subject to liability.
I. Background
The plaintiff father (hereinafter the father) and nonparty mother (hereinafter the mother) have two children together, including the infant plaintiff, who was born in 2017. In 2017, the children were removed from their parents' custody and placed in kinship foster care with their paternal grandmother (hereinafter the foster parent).
On September 21, 2019, the foster parent drove the infant plaintiff, then two years old, and the infant plaintiff's four-year-old sister to Mashashimuet Park in Sag Harbor for a supervised visit with the mother. After leaving the children in the care of Kevin Byrne, the assigned caseworker for the Suffolk County Department of Social Services (hereinafter the DSS), the foster parent left the park to go to work. Byrne testified at his deposition that it was the policy and procedure of the DSS that no visit could start until an employee of the County was present to supervise. After the foster parent dropped off the children, Byrne walked them to the playground for the visit with the mother, who had brought a 10-year-old daughter who was in the mother's custody.
During the supervised visit, the infant plaintiff allegedly was injured when she fell on a slide while attempting to walk up the portion intended for children to slide down. The slide on which the accident occurred was in an area of the playground designated with a sign as intended for children 5 to 12 years old. The foster parent testified at her deposition that she believed that the slide was "[w]ay too big for [the infant plaintiff]." Byrne acknowledged that he did not observe the accident or the infant plaintiff walking up the slide prior to the accident, and that he learned of the [*2]accident shortly thereafter from the mother's 10-year-old daughter. Byrne estimated that the infant plaintiff was playing on the slide for approximately four to five minutes prior to the accident. According to Byrne, at the time of the accident, the mother was standing by the top of the slide. The mother testified at her deposition that after the accident, Byrne told her to "give [the infant plaintiff] a couple of minutes" because there was no visible redness or swelling.
The foster parent testified that when she arrived at the playground, she learned that Byrne had not called for an ambulance because he was "fumbled for words." She also indicated that Byrne was "not in good health" and, therefore, was "[p]hysically unable" to pick up the infant plaintiff, who was unable to walk following the accident.
Byrne testified that his role during the supervised visit was to "[b]asically observe," although he acknowledged that he could intervene if he observed anything during the visit that he believed "might be inappropriate or dangerous for the child" or if the mother permitted the infant plaintiff to engage in an activity that he felt was inappropriate.
In 2020, the infant plaintiff, by the father, and the father individually (hereinafter together the plaintiffs), commenced this action, inter alia, to recover damages for personal injuries against, among others, the County of Suffolk. The plaintiffs alleged, among other things, that the accident was caused by the negligent supervision of Byrne.
After joinder of issue, the County moved, inter alia, for summary judgment dismissing the complaint insofar as asserted against it. In support of the motion, the County argued, among other things, that it was immune from liability, since Byrne was performing a governmental function involving the exercise of discretion and did not owe a special duty to the infant plaintiff. The County asserted that Byrne's role was "simply to observe that the children in fact visit with their parent in an effort to maintain and strengthen the parental bond," and that the accident took place "under the direct supervision of [the infant plaintiff's] biological mother." The County also argued that there was no evidence that any action or inaction by Byrne proximately caused the accident.
In an order dated April 6, 2023, the Supreme Court, inter alia, denied that branch of the County's motion which was for summary judgment dismissing the complaint insofar as asserted against it. The court determined, among other things, that the County failed to establish, prima facie, that it was immune from liability based on discretionary conduct and that Byrne's alleged negligent supervision was not a proximate cause of the infant plaintiff's injuries. The County appeals.
On appeal, the County argues, inter alia, that it did not owe a special duty to the infant plaintiff. The County also contends that even assuming, arguendo, a special duty existed, it is immune from liability for the performance of a governmental function involving the exercise of discretion. In any event, the County argues that its alleged negligent supervision was not a proximate cause of the accident.
II. Analysis
A. Governmental Immunity
"When a negligence claim is asserted against a municipality, the first issue for a court to decide is whether the municipal entity was engaged in a proprietary function or acted in a governmental capacity at the time the claim arose" (Applewhite v Accuhealth, Inc., 21 NY3d 420, 425; see Marino v City of New York, 223 AD3d 888, 889). "If the municipality is engaged in a proprietary function, it is subject to suit under the ordinary rules of negligence" (Trenholm-Owens v City of Yonkers, 197 AD3d 521, 523; see Applewhite v Accuhealth, Inc., 21 NY3d at 425). "In contrast, a municipality will be deemed to have been engaged in a governmental function when its acts are undertaken for the protection and safety of the public pursuant to the general police powers" (Applewhite v Accuhealth, Inc., 21 NY3d at 425 [internal quotation marks omitted]).
"Once it is determined that a municipality was exercising a governmental function, the next inquiry focuses on the extent to which the municipality owed a duty to the injured party" (Santaiti v Town of Ramapo, 162 AD3d 921, 924; see Applewhite v Accuhealth, Inc., 21 NY3d at 426). "In order to sustain liability against a municipality engaged in a governmental function, 'the duty breached must be more than that owed the public generally'" (Santaiti v Town of Ramapo, 162 AD3d at 924, quoting Lauer v City of New York, 95 NY2d 95, 100). "Indeed, 'although a municipality owes a general duty to the public at large . . . this does not create a duty of care running to a specific individual sufficient to support a negligence claim, unless the facts demonstrate that a special duty was created'" (Santaiti v Town of Ramapo, 162 AD3d at 924, quoting Valdez v City of New York, 18 NY3d 69, 75). The issue of whether a special duty exists "'is generally a question for the jury'" (Santaiti v Town of Ramapo, 162 AD3d at 924, quoting Coleson v City of New York, 24 [*3]NY3d 476, 483). A special duty can arise where, as relevant here, "'the [municipality] voluntarily assumed a duty to the plaintiff beyond what was owed to the public generally'" (Koyko v City of New York, 189 AD3d 811, 812, quoting Applewhite v Accuhealth, Inc., 21 NY3d at 426). "A municipality will be held to have voluntarily assumed a special duty where there is: '(1) an assumption by the municipality, through promises or actions, of an affirmative duty to act on behalf of the party who was injured; (2) knowledge on the part of the municipality's agents that inaction could lead to harm; (3) some form of direct contact between the municipality's agents and the injured party; and (4) that party's justifiable reliance on the municipality's affirmative undertaking'" (Koyko v City of New York, 189 AD3d at 812, quoting Cuffy v City of New York, 69 NY2d 255, 260).
Further, "[u]nder the doctrine of governmental function immunity, government action, if discretionary, may not be a basis for liability, while ministerial actions may be, but only if they violate a special duty owed to the plaintiff, apart from any duty to the public in general" (Kralkin v City of New York, 204 AD3d 772, 772; see McLean v City of New York, 12 NY3d 194, 203). "Discretionary or quasi-judicial acts involve the exercise of reasoned judgment which could typically produce different acceptable results, whereas a ministerial act envisions direct adherence to a governing rule or standard with a compulsory result" (Kralkin v City of New York, 204 AD3d at 773; see Tango v Tulevech, 61 NY2d 34, 41). Additionally, a municipality is not immune from liability based upon the exercise of discretionary authority "'unless the municipal defendant establishes that the discretion possessed by its employees was in fact exercised in relation to the conduct on which liability is predicated'" (Ferreira v City of Binghamton, 38 NY3d 298, 311, quoting Valdez v City of New York, 18 NY3d at 76).
1. Governmental Function
Here, with regard to the threshold issue of whether the County acted in a proprietary or governmental function, the plaintiffs do not dispute that Byrne was engaged in a governmental function at the time of the accident. "The function of dealing with children in need of foster care is deemed best executed by government and is undertaken without thought of profit or revenue" (Kochanski v City of New York, 76 AD3d 1050, 1052). Since Byrne was supervising visitation as part of his duties for the DSS on behalf of a child in foster care at the time of the accident, he was engaged in a governmental function. Thus, the inquiry turns to whether the County owed a special duty to the infant plaintiff.
2. Special Duty
Contrary to the County's contention, it failed to establish, prima facie, that it did not owe a special duty to the infant plaintiff.
The issue of whether a municipality owes a special duty to children placed in foster care has generally arisen in the context of actions involving children who were subjected to sexual or physical abuse while in foster care. For instance, in Bartels v County of Westchester (76 AD2d 517, 522), this Court determined that a county may be liable for physical injuries suffered by an infant in a foster home, as the county "undertook to care for the infant plaintiff, and this duty, once assumed, had to be carried out with due regard for the child's safety."
Similarly, in G.F. v Westchester County (2024 NY Slip Op 30447[U] [Sup Ct, Westchester County]), which involved allegations that a child in foster care was sexually abused, the Supreme Court determined that a county assumed a special duty to the infant plaintiff. The court explained that "[i]n contrast to its general population, the [c]ounty seized responsibility for plaintiff's care and upbringing," as the county had custody of the child in foster care and "exercised its parens patriae function to safeguard the best interests of plaintiff and had control over him during the time of the abuse" (id. at *5).
By contrast, in Weisbrod-Moore v Cayuga County (216 AD3d 1459), the Appellate Division, Fourth Department, determined that a complaint alleging that the plaintiff was subjected to sexual and physical abuse while in foster care was insufficient to allege the existence of a special duty owed by a county to the plaintiff. The court explained that the allegations in the complaint pertained specifically to the county's failure to meet its obligations to foster children pursuant to the Social Services Law, and that "'[t]he failure to perform a statutory duty, or the negligent performance of that duty, cannot be equated with the breach of a duty voluntarily assumed'" (id. at 1462, quoting Estate of M.D. v State of New York, 199 AD3d 754, 757).
The circumstances of the case at bar are distinguishable from the aforementioned cases, as the infant plaintiff did not sustain injuries while in a foster home, but rather during visitation with the mother at a public location under supervision by a caseworker for the DSS. It is [*4]an issue of first impression whether the municipality assumed a special duty to the foster child in such instance. We hold that under these circumstances, a municipality may owe a special duty to the foster child.
It is well settled that a school owes a special duty to provide its students with adequate supervision, which "derives from the fact that the school, in assuming physical custody and control of the students, takes the place of the parents or guardians, and therefore acts in loco parentis" (Hauburger v McMane, 211 AD3d 715, 716; see Pratt v Robinson, 39 NY2d 554, 560; Ferguson v City of New York, 118 AD3d 849, 849-850). This special duty of a school to its students is temporary in nature and ceases once a student "has passed out of the orbit of its authority" (Pratt v Robinson, 39 NY2d at 560).
Here, the infant plaintiff was injured under circumstances analogous to a child injured on a playground while at school. At the start of the visit, the foster parent surrendered physical custody and control of the infant plaintiff to Byrne and then left the park for the duration of the visit. While the mother was present during the visit, it is undisputed that she was not the custodial parent and, indeed, was not even permitted to interact with the infant plaintiff outside the presence of the assigned caseworker. Notably, Byrne acknowledged that it was the policy and procedure of the DSS that no visit could start until an employee of the County was present to supervise, and that he was empowered to intervene if he observed anything he believed "might be inappropriate or dangerous for the child" or if the mother permitted the infant plaintiff to engage in an inappropriate activity. Therefore, the mother did not possess an unfettered degree of control over the infant plaintiff such that she could be deemed the party in physical custody of the infant plaintiff during the supervised visit. Rather, by assuming physical control over the infant plaintiff in the parking lot when the foster parent dropped off the infant plaintiff for the visit, Byrne acted in loco parentis during the visit.
Thus, the County's contention that the mother was the individual responsible for supervising the infant plaintiff is not supported by the record. Moreover, the County cannot reasonably take the position that it was entitled to rely on the mother to ensure the safety of the infant plaintiff during visitation when the mother was not permitted to have unsupervised visitation with the infant plaintiff. If the presence of a caseworker was deemed necessary to ensure that the mother acted appropriately during visitation, then it necessarily follows that the caseworker was obligated to ensure that the mother did not permit the infant plaintiff to engage in any unsafe behavior.
Consequently, we hold that the County may assume a special duty to a foster child during the course of visitation supervised by a DSS caseworker. We also determine that the County's conclusory assertions regarding the lack of a special duty were insufficient to meet its burden of establishing, prima facie, that it did not owe a special duty to the infant plaintiff (see Stevens v Town of E. Fishkill Police Dept., 198 AD3d 832, 833; Morgan-Word v New York City Dept. of Educ., 96 AD3d 1025, 1026).
3. Discretionary Conduct
Although discretionary governmental action, as opposed to ministerial governmental action, may not be a basis for liability even if a special duty exists (see Ferreira v City of Binghamton, 38 NY3d at 311-312; Kralkin v City of New York, 204 AD3d at 772-773), the County's bare assertion that Byrne's conduct was discretionary was insufficient to meet its prima facie burden, as "'a municipality must do much more than merely allege that its employee was engaged in activities involving the exercise of discretion'" (Coleson v City of New York, 125 AD3d 436, 437, quoting Valdez v City of New York, 18 NY3d at 79).
To the extent the County contends that Byrne's conduct was discretionary because "New York State guidelines set forth by the Office of Children and Family Services" provide for "the least restrictive level of supervision necessary for children in foster care," the County's contention is improperly raised for the first time on appeal (see Shahid v City of New York, 144 AD3d 1127, 1129-1130).
Moreover, even assuming, arguendo, that the County established, prima facie, that Byrne's authority to supervise visitation was discretionary in nature, the County failed to demonstrate that such discretion "'was in fact exercised in relation to the conduct on which liability is predicated'" (Ferreira v City of Binghamton, 38 NY3d at 311, quoting Valdez v City of New York, 18 NY3d at 76). Since Byrne acknowledged that he did not observe the infant plaintiff walking up the portion of the slide intended for children to slide down prior to the accident, it cannot be said that he made a discretionary decision whether or not the infant plaintiff's behavior warranted his intervention. Thus, any exercise of discretion by Byrne during visitation bore no relation to the [*5]conduct on which liability is predicated.
Consequently, the County failed to establish, prima facie, that it was immune from liability for a claim of negligent supervision for the subject accident.
B. Proximate Causation
Generally, the adequacy of a defendant's supervision of children on a playground and whether inadequate supervision was a proximate cause of an accident are questions of fact for a jury (see L.S. v Massapequa Union Free Sch. Dist., 215 AD3d 708, 709-710). "However, where an accident occurs in so short a span of time that even the most intense supervision could not have prevented it, any lack of supervision is not the proximate cause of the injury and summary judgment in favor of the . . . defendant is warranted" (id. at 710; see R.B. v Sewanhaka Cent. High Sch. Dist., 207 AD3d 607, 610).
Contrary to the County's contention, it failed to establish, prima facie, that Byrne provided adequate supervision to the infant plaintiff, or that a lack of adequate supervision was not a proximate cause of the accident (see L.S. v Massapequa Union Free Sch. Dist., 215 AD3d at 710; B.T. v Bethpage Union Free Sch. Dist., 173 AD3d 806, 808). Viewing the evidence in the light most favorable to the plaintiffs (see Rodriguez v American Airlines, Inc., 219 AD3d 948), there were triable issues of fact as to whether the infant plaintiff was engaged for an extended period of time in a dangerous activity given her young age, which warranted more heightened supervision, and if so, whether such supervision would have prevented the accident (see SM v Plainedge Union Free Sch. Dist., 162 AD3d 814, 817; DiGiacomo v Town of Babylon, 124 AD3d 828, 829). The mother testified that the infant plaintiff and her sister were playing on the big slide where the accident occurred—which was intended for older children ages 5 to 12—for approximately 10 to 15 minutes prior to the accident, and Byrne estimated that they were playing on that slide for 4 to 5 minutes. Thus, the County's evidentiary submissions were insufficient to establish, prima facie, that the accident occurred in so short a span of time that even the most intense supervision could not have prevented it (see M.P. v Mineola Union Free Sch. Dist., 166 AD3d 953, 955).
III. Conclusion
In light of the foregoing, the County failed to establish its prima facie entitlement to judgment as a matter of law, and thus, we need not consider the sufficiency of the plaintiffs' submissions in opposition (see Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853).
The parties' remaining contentions either were improperly raised for the first time in reply papers, and thus, are not properly before this Court, or are without merit.
Accordingly, the Supreme Court properly denied that branch of the County's motion which was for summary judgment dismissing the complaint insofar as asserted against it, and the order is affirmed insofar as appealed from.
BARROS, J.P., WARHIT and VENTURA, JJ., concur.
ORDERED that the order is affirmed insofar as appealed from, with costs.
ENTER:
Darrell M. Joseph
Clerk of the Court