Adams v Suffolk County (2024 NY Slip Op 05428)

Adams v Suffolk County

2024 NY Slip Op 05428

Decided on November 6, 2024

Appellate Division, Second Department

Ventura, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on November 6, 2024
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

COLLEEN D. DUFFY, J.P.
JOSEPH J. MALTESE
HELEN VOUTSINAS
LOURDES M. VENTURA, JJ.

2023-10245
 (Index No. 611071/21)

[*1]Sandra Adams, respondent, 
v
Suffolk County, appellant, et al., defendants (and a third-party action).

APPEAL by the defendant Suffolk County, in an action to recover damages for personal injuries, from an order of the Supreme Court (Leonard D. Steinman, J.), dated October 18, 2023, and entered in Suffolk County. The order, insofar as appealed from, denied that branch of that defendant's motion which was for summary judgment dismissing so much of the first cause of action as sought to recover compensatory damages.

Christopher J. Clayton, County Attorney, Hauppauge, NY (Stephanie N. Hill, of counsel), for appellant.
Herman Law, New York, NY (Jeffrey Herman, Stuart Mermelstein, Jenny Rossman, Mark C. Zauderer, Ira B. Matetsky, and Jason T. Cohen of counsel), for respondent.

VENTURA, J.

OPINION & ORDER
The Court of Appeals has long held that "an agency of government is not liable for the negligent performance of a governmental function unless there existed a special duty to the injured person, in contrast to a general duty owed to the public" (McLean v City of New York, 12 NY3d 194, 199 [internal quotation marks omitted]). In this case, we consider how this rule applies in the context of claims against municipalities for the negligent placement and supervision of children in foster care. In contrast to the recent holdings of the Appellate Division, First and Fourth Departments, we conclude that a municipal agency owes a special duty to a foster child upon assuming legal custody of that child. An agency that assumes custody of a foster child, and which selects and supervises that child's foster parents, necessarily owes a duty to the child "more than that owed the public generally" (Lauer v City of New York, 95 NY2d 95, 100). Thus, where, as here, a plaintiff asserts causes of action to recover damages for harm suffered by a foster child due to the negligent performance of a governmental function and alleges facts sufficient to show that the defendant municipal agency assumed legal custody over that child, that plaintiff need not prove any additional facts in order to satisfy the special duty rule.
I. Background of the Action
The plaintiff commenced this action pursuant to the Child Victims Act (see CPLR 214-g) against the defendant Suffolk County, among others, to recover damages for alleged sexual abuse that she suffered as a foster child in the County's custody in the 1970s. The plaintiff alleged that the County's Department of Social Services (hereinafter DSS) assumed legal custody of her when she was a toddler and placed her in foster care. The plaintiff also asserted that, over the years, DSS placed her in different foster homes on Long Island. In the complaint, the plaintiff alleged that, between the ages of 10 and 11, she was sexually abused by the foster father the County selected to [*2]care for her while she was residing at his home in Huntington Station. According to the plaintiff, DSS then placed her in the care of foster parents who resided in Greenlawn. However, she allegedly also suffered sexual abuse while residing at that home, perpetrated on multiple occasions by an adult neighbor. The plaintiff asserted that, at 11 or 12 years old, she became pregnant as a result of the neighbor's abuse. According to the plaintiff, she gave birth to a child, despite the fact that she was then a child herself, because the "pregnancy was too far advanced to perform an abortion at the time it was discovered."
After the conclusion of discovery, the County moved, inter alia, for summary judgment dismissing so much of the first cause of action, alleging negligence against the County, as sought to recover compensatory damages. By order dated October 18, 2023, the Supreme Court, among other things, denied that branch of the motion. In doing so, the court rejected the County's contention that dismissal was warranted due to the plaintiff's failure to establish that the County owed her a special duty. The court also determined, inter alia, that the County's arguments regarding prior notice and the governmental function immunity defense did not warrant summary judgment in its favor. The County appeals.
II. The County Did Not Establish Its Entitlement to Summary Judgment Based upon the Special Duty Rule
A. General Principles and Purpose of the Rule
"To establish a cause of action sounding in negligence, a plaintiff must establish the existence of a duty on [the] defendant's part to [the] plaintiff, breach of the duty[,] and damages" (Davila v Orange County, 215 AD3d 632, 633-634 [internal quotation marks omitted]). "Thus, a threshold issue that the court must resolve is whether the defendant owed a legally recognized duty to the plaintiff" (Ferreira v City of Binghamton, 38 NY3d 298, 308 [internal quotation marks omitted]). When considering whether a municipality may be held liable in tort for allegedly breaching a duty to a plaintiff, "the first issue for a court to decide is whether the municipal entity was engaged in a proprietary function or acted in a governmental capacity at the time the claim arose" (Applewhite v Accuhealth, Inc., 21 NY3d 420, 425).
"A government entity performs a purely proprietary role when its activities essentially substitute for or supplement traditionally private enterprises. In contrast, a municipality will be deemed to have been engaged in a governmental function when its acts are undertaken for the protection and safety of the public pursuant to the general police powers" (Turturro v City of New York, 28 NY3d 469, 477-478 [citations and internal quotation marks omitted]).
"If the municipality's actions fall in the proprietary realm, it is subject to suit under the ordinary rules of negligence applicable to nongovernmental parties" (Applewhite v Accuhealth, Inc., 21 NY3d at 425).
In contrast, however, "[w]hen a claim is made that a municipality has negligently exercised a governmental function, liability turns upon the existence of a special duty to the injured person" (Garrett v Holiday Inns, 58 NY2d 253, 261; see McLean v City of New York, 12 NY3d at 199). The special duty rule "is an offshoot of the general proposition that[,] [t]o sustain liability against a municipality, the duty breached must be more than that owed the public generally" (Valdez v City of New York, 18 NY3d 69, 75 [internal quotation marks omitted]). In other words, it constitutes "an exception to th[e] general rule" that a municipality may not be held liable for the breach of a duty "ordinarily . . . owed to the public at large and not to any particular individual or class of individuals" (Cuffy v City of New York, 69 NY2d 255, 260; see Florence v Goldberg, 44 NY2d 189, 195). "The exception is reserved for a few, special cases" (Laratro v City of New York, 8 NY3d 79, 84 [internal quotation marks omitted]). Although the rule applies to municipal defendants, it flows from the basic principle, applicable to all defendants, that "tort liability . . . [only] exist[s] where there [is] some relationship on the part of the defendant to the plaintiff creating a duty to use due care for the benefit of particular persons or classes of persons" (Motyka v City of Amsterdam, 15 NY2d 134, 139). The special duty rule is necessary, as explained by the Court of Appeals, "because the government is not an insurer against harm suffered by its citizenry at the [*3]hands of third parties" (Valdez v City of New York, 18 NY3d at 75). Without the rule, "the cost to municipalities of allowing recovery would be excessive; the threat of liability might deter or paralyze useful activity; and thus the net result of allowing recovery would be to make municipal governments less, not more, effective in protecting their citizens" (Laratro v City of New York, 8 NY3d at 82). Further, if the courts were to recognize an obligation to protect a particular individual or class of people from harm based solely on a municipality's general duty to protect the public, the judicial branch would improperly usurp the roles of the legislative and executive branches in determining how to allocate and deploy public resources (see Weiner v Metropolitan Transp. Auth., 55 NY2d 175, 181-182; Riss v City of New York, 22 NY2d 579, 581-583). The special duty rule therefore serves "to rationally limit the class of citizens to whom the municipality owes a duty of protection" (Kircher v City of Jamestown, 74 NY2d 251, 258).
The Court of Appeals has
"recognized that a special duty may arise in three situations: where (1) the plaintiff belonged to a class for whose benefit a statute was enacted; (2) the government entity voluntarily assumed a duty to the plaintiff beyond what was owed to the public generally; or (3) the municipality took positive control of a known and dangerous safety condition" (Maldovan v County of Erie, 39 NY3d 166, 171 [internal quotation marks omitted]; see Garrett v Holiday Inns, 58 NY2d at 261-262).
As relevant here, "the second method . . . [is] sometimes referred to as a special relationship" (Maldovan v County of Erie, 39 NY3d at 172; see Applewhite v Accuhealth, Inc., 21 NY3d at 430; Cuffy v City of New York, 69 NY2d at 260). In circumstances where such a relationship exists, a municipality may be held liable for damages flowing from any breach of its voluntarily assumed duty, among other reasons, because it has determined, "by its conduct[,] . . . how its resources are to be allocated [with] respect to that circumstance" (Kircher v City of Jamestown, 74 NY2d at 256). "[W]hen a special relationship exists between the municipality and an individual or class of persons," the municipality has a "duty to use reasonable care for those persons' benefit" (Garrett v Holiday Inns, 58 NY2d at 261). "[I]t must perform that duty in a nonnegligent manner, notwithstanding that absent its voluntary assumption of that duty, none would have otherwise existed" (Florence v Goldberg, 44 NY2d at 196). Generally, to establish the existence of a special relationship, a plaintiff must demonstrate:
"(1) an assumption by the municipality, through promises or actions, of an affirmative duty to act on behalf of the party who was injured; (2) knowledge on the part of the municipality's agents that inaction could lead to harm; (3) some form of direct contact between the municipality's agents and the injured party; and (4) that party's justifiable reliance on the municipality's affirmative undertaking" (Cuffy v City of New York, 69 NY2d at 260).
Since the Court of Appeals enunciated those elements together for the first time in Cuffy, it has subsequently referred to them as "the Cuffy factors" or "the Cuffy test" (Maldovan v County of Erie, 39 NY3d at 173). Generally, "[a]ll four elements must be present for a special duty to attach" (id. at 172 [internal quotation marks omitted]).
B. DSS Was Engaged in a Governmental Function
Here, as an initial matter, the parties do not dispute that DSS was engaged in a governmental function when it selected the plaintiff's foster parents and thereafter, through its caseworkers, supervised her care in the foster homes. Even if this issue were in dispute, the result is nonetheless clear. DSS and similar municipal agencies statewide "perform[ ] the function of caring for children in need of foster care," which "is deemed best executed by government and is undertaken without thought of profit or revenue" (Kochanski v City of New York, 76 AD3d 1050, 1052). Therefore, DSS's "management of the foster care system" in the County "is undertaken for the protection and safety of the public pursuant to the general police power" (Q.G. v City of New York, 222 AD3d 443, 443).
Since DSS was acting in a governmental capacity with regard to "the acts or omissions claimed to have caused the [plaintiff's] injur[ies]" (Matter of World Trade Ctr. Bombing [*4]Litig., 17 NY3d 428, 447), we now turn to the issue of whether the County, through DSS, owed a special duty to the plaintiff (see P.D. v County of Suffolk, ___ AD3d ___, 2024 NY Slip Op 03405, *3 [2d Dept]; Kochanski v City of New York, 76 AD3d at 1052).
C. The Court of Appeals Has Not Yet Directly Addressed the Application of the Special Duty Rule in This Context
At the outset of analyzing this issue, it is important to note that the Court of Appeals has not directly addressed the manner in which the special duty rule applies in the type of circumstances presented here. Three decisions, in particular—Blanca C., Mark G., and Maldovan, discussed below—demonstrate that the Court has not yet articulated precisely how to apply the special duty rule in circumstances where, as here, a plaintiff seeks to recover damages for harm suffered as a child in a foster home allegedly caused by a municipal agency's negligent placement or supervision.
In Blanca C. v County of Nassau (65 NY2d 712, 713-714, affg 103 AD2d 524), where the plaintiffs sought damages from a municipality for "injuries inflicted by . . . foster parents upon . . . foster children," the Court of Appeals, due to the posture of the case, concluded that it was not necessary "to pass upon whether and to what extent a governmental agency may be held liable for such an injury on the theory of negligent supervision of the foster parents' care of the foster children entrusted to them." There, the case proceeded to trial, and the Supreme Court issued a vicarious liability charge to the jurors, informing them that the foster parents should be viewed as municipal employees with regard to their care of the children (see Blanca C. v County of Nassau, 103 AD2d at 524-527). The jury found, in effect, that the municipality did not directly breach any duty of care owed to the foster children, but that it was nonetheless vicariously liable for the acts of the foster parents (see id. at 526-529). Since the issue on appeal turned solely on whether the municipality could be held vicariously liable for the foster parents' acts, the Court of Appeals did not reach any issues relating to the municipality's liability for its own negligence (see Blanca C. v County of Nassau, 65 NY2d at 713-714).
Thereafter, in Mark G. v Sabol (93 NY2d 710, 718), the Court of Appeals was tasked with deciding whether a group of children could hold "New York City child welfare officials" liable "for money damages under two distinct titles of" the Social Services Law for "abuse or neglect" they suffered "in their homes or foster homes." There, however, the primary issue presented on appeal was not whether the defendants breached general duties relating to the placement or supervision of the foster children (see id. at 718-727). Instead, the Court focused on the plaintiffs' allegations that the defendants had failed to provide specific types of statutory services which would have either "avoid[ed] foster care placement" altogether or, upon placement in foster care, "expedit[ed] their return to a safe home environment" (id. at 726). The Court analyzed the question of whether the statutory schemes at issue gave rise to a private right of action, concluding that they did not (see id. at 719-722), while granting the plaintiffs leave to replead common-law negligence causes of action (see id. at 726-727). In other words, there, the Court did not close the door on whether the plaintiffs might have had viable negligence causes of action.
Likewise, more recently, in Maldovan v County of Erie (39 NY3d at 170), the estate of an adult "woman with developmental disabilities," who was "tortured and murdered . . . in her home" by her mother and a brother, asserted a negligence cause of action against two municipal defendants, alleging that the acts and omissions of their agencies, including Adult Protective Services, proximately caused the decedent's injuries and resulting death. In concluding that the municipal defendants were entitled to summary judgment on the ground that "they did not voluntarily assume a duty to [the decedent]" (id. at 172) and rejecting the plaintiff's argument that the Cuffy factors should not apply, the Court of Appeals expressly noted that it was "not address[ing] whether or how the special duty rule should apply in a different case where the injured party was a child" (id. at 174).
For its part, this Court has long recognized that "counties and foster care agencies may be sued to recover damages for negligence in the selection of foster parents and in supervision of the foster home" (Keizer v SCO Family of Servs., 120 AD3d 475, 476; see Barnes v County of Nassau, 108 AD2d 50, 54-55). In doing so, we have implicitly rejected the argument that a municipality, in assuming the legal custody of a child and placing him or her in foster care, assumes no special duty to the child (see Bartels v County of Westchester, 76 AD2d 517, 520-522). This [*5]appeal provides us the opportunity to expressly address the special duty rule in the context of the relationship between municipal foster care agencies and foster children.
D. Upon DSS's Assumption of Legal Custody of the Plaintiff, the County Necessarily Assumed a Special Duty to Her
The plaintiff alleged that DSS placed her in the foster homes where she suffered abuse, that it was charged with supervising the foster parents' care of her, and that it negligently carried out those duties. "From early times in our law the sovereign has been considered to be parens patriae of destitute or abandoned children, and our Constitution continues that obligation" (id. at 520, citing NY Const, art XVII, § 1; see Matter of Cristella B., 77 AD3d 654, 656; Kochanski v City of New York, 76 AD3d at 1052). In selecting and supervising the plaintiff's foster parents, DSS was exercising "the government's parens patriae function to safeguard the [plaintiff's] best interests" (Torres v Little Flower Children's Servs., 64 NY2d 119, 127; see Matter of Leon RR, 48 NY2d 117, 124). Notably, as the plaintiff alleged in the complaint, DSS had legal custody of her during her time in foster care (see Matter of Michael B., 80 NY2d 299, 309, citing Social Services Law § 383[2]; Matter of Samson R. [Christopher R.], 227 AD3d 911, 911; McCabe v Dutchess County, 72 AD3d 145, 150).
Recently, in P.D. v County of Suffolk (___ AD3d ___, 2024 NY Slip Op 03405), although not expressly stated, this Court indicated that a municipal foster care agency's legal custody of a foster child was sufficient to establish a special duty. There, we quoted, with approval, a trial court decision that reached that conclusion (see id. at *3, citing G.F. v Westchester County, 2024 NY Slip Op 30447[U], *5 [Sup Ct, Westchester County]). We now so hold.
Similar to the manner in which "a school district owes a 'special duty' to [its] students" when "act[ing] in loco parentis" (Ferguson v City of New York, 118 AD3d 849, 850, quoting Pratt v Robinson, 39 NY2d 554, 560; see Wilder v Bernstein, 965 F2d 1196, 1204 [2d Cir]), or in which "the State owes a duty of care to safeguard inmates" upon "assum[ing] physical custody of [them]" (Sanchez v State of New York, 99 NY2d 247, 252; see Rosa v Triborough Bridge & Tunnel Auth., 218 AD3d 810, 814), a municipality that has assumed legal custody of a foster child, and which selects and supervises the foster parents of that child, necessarily owes a duty to the child "more than that owed [to] the public generally" (Applewhite v Accuhealth, Inc., 21 NY3d at 426 [internal quotation marks omitted]). Indeed, a municipality's "custody of [a] child necessarily distinguishes [its] relationship" with the child from its relationship "to the public at large" (G.F. v Westchester County, 2024 NY Slip Op 30447[U], *3; see D.S.P. v Westchester County, 210 NYS3d 694, 702 [Sup Ct, Westchester County]). Moreover, we note that the question of whether a municipality's legal custody of a foster child is sufficient to establish a special duty was not adequately presented nor decided in our recent determination in Davila v Orange County (229 AD3d 500).
Contrary to the County's contention, there is no material distinction between legal and physical custody when considering whether a municipality owes a foster child a special duty. Whether a municipal agency assumes physical custody of an individual, as in the case of school districts and correctional agencies taking custody of students and inmates, respectively, or whether an agency assumes legal custody of a foster child, the municipality has "voluntarily assumed a duty to the plaintiff beyond what was owed to the public generally," thereby creating the requisite special relationship (Maldovan v County of Erie, 39 NY3d at 171 [internal quotation marks omitted]). Here, in assuming custody of the plaintiff, DSS "'undertook to care for the . . . plaintiff, and this duty, once assumed, had to be carried out with due regard for [her] safety'" (P.D. v County of Suffolk, ___ AD3d ___, 2024 NY Slip Op 03405, *3, quoting Bartels v County of Westchester, 76 AD2d at 522). "As Chief Judge Cardozo succinctly stated: 'The hand once set to a task may not always be withdrawn with impunity though liability would fail if it had never been applied at all'" (Florence v Goldberg, 44 NY2d at 196, quoting Moch Co. v Rensselaer Water Co., 247 NY 160, 167). Therefore, a plaintiff alleging that a municipal foster care agency negligently selected or supervised the foster parents charged with caring for that plaintiff as a child need not plead or prove additional facts supporting a special relationship in order to satisfy the special duty rule (see Grabowski v Orange County, 219 AD3d 1314, 1315; Bartels v County of Westchester, 76 AD2d at 520-523).
Since the County's argument, in effect, was premised upon the idea that something beyond the mere custodial relationship between a foster child and a municipal foster care agency was [*6]required to establish the existence of a special duty, the County failed to meet its prima facie burden for summary judgment on this issue.
E. Even if the Cuffy Factors Applied, the County Did Not Show that the Plaintiff Failed to Satisfy Them
The County's contention that the plaintiff failed to allege facts satisfying the justifiable reliance element of the special relationship test is without merit. That test, which, again, is sometimes referred to as "the Cuffy test" or "the Cuffy factors" (Maldovan v County of Erie, 39 NY3d at 173), is inapplicable in circumstances where a municipality has assumed custody of a plaintiff. Notably, in such circumstances, the Court of Appeals has not applied the Cuffy factors or any of the other standards it has developed for ascertaining the existence of a special duty, since such a duty necessarily exists by virtue of the custodial relationship (see Sanchez v State of New York, 99 NY2d at 253 n 3; Ferguson v City of New York, 118 AD3d at 850, citing Pratt v Robinson, 39 NY2d at 560).
Nonetheless, even if the Cuffy factors needed to be considered (see Howell v City of New York, 39 NY3d 1006, 1008-1009), the County's contention is still without merit.
"[The justifiable reliance] element provides the essential causative link between the 'special duty' assumed by the municipality and the alleged injury. Indeed, at the heart of most of these 'special duty' cases is the unfairness that the courts have perceived in precluding recovery when a municipality's voluntary undertaking has lulled the injured party into a false sense of security and has thereby induced him [or her] either to relax his [or her] own vigilance or to forego other available avenues of protection" (Cuffy v City of New York, 69 NY2d at 261).
Contrary to the County's assertion, a foster child necessarily relies upon a foster care agency and has no role in whatever decision is made to forego other potential options for care. Indeed, "[i]n 'foster care, a child loses his [or her] freedom and ability to make decisions about his [or her] own welfare, and must rely on the state to take care of his [or her] needs'" (Smith v District of Columbia, 413 F3d 86, 95 [DC Cir], quoting Norfleet v Arkansas Dept. of Human Servs., 989 F2d 289, 293 [8th Cir]). Precluding a foster child from recovering damages for a municipality's alleged breach of the duties it voluntarily assumed to that child would therefore result in the precise type of unfairness the Court of Appeals has sought to avoid (see Cuffy v City of New York, 69 NY2d at 261). The County did not argue that the plaintiff failed to satisfy any of the other Cuffy factors, and, in any event, we conclude that those factors were satisfied by virtue of the relationship at issue between a municipal foster care agency and the then foster child.
F. Federal Precedent Regarding the Special Relationship Due Process Exception Supports Our Conclusion
Our conclusion that legal custody is sufficient to establish a special duty is supported by federal court precedent analyzing a state's or municipality's affirmative duty under the Due Process Clause to protect a plaintiff from harm inflicted by third parties. The United States Supreme Court has held that the clause "generally confer[s] no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual" (DeShaney v Winnebago County Dept. of Social Servs., 489 US 189, 196). However, "in certain limited circumstances," according to the Court, "the Constitution imposes upon the [s]tate affirmative duties of care and protection with respect to particular individuals" (id. at 198).
As a result, the United States Court of Appeals for the Second Circuit has recognized—similar to the special duty rule that exists in New York—that "the state or its agents may owe a constitutional obligation to the victim of private violence if the state had a 'special relationship' with the victim" (Matican v City of New York, 524 F3d 151, 155 [2d Cir]). The Second Circuit's decisions on this issue have "focused on involuntary custody as the linchpin of any special relationship exception," since "'[s]pecial relationships arise ordinarily if a government actor has assumed an obligation to protect an individual by restricting the individual's freedom in some [*7]manner'" (id. at 156, quoting Lombardi v Whitman, 485 F3d 73, 79 n 3 [2d Cir]). Notably, in this context, the Second Circuit has deemed a municipality "liable under [the] Due Process Clause for abuse suffered by [a] child in foster care, [while] emphasizing [the] custodial nature of foster care placement" (id., citing Doe v New York City Dept. of Social Servs., 649 F2d 134, 141 [2d Cir]; see Smith v Tkach, 844 Fed Appx 414, 416 [2d Cir]).
Other federal appellate courts have reached similar conclusions, focusing on the custodial relationship between foster care agencies and the children they serve (see e.g. Henry A. v Willden, 678 F3d 991, 998, 1000 [9th Cir]; Nicini v Morra, 212 F3d 798, 808 [3d Cir]; Norfleet v Arkansas Dept. of Human Servs., 989 F2d at 292-293). For its part, the United States Supreme Court has recognized that it is possible that "the [s]tate may be held liable under the Due Process Clause for failing to protect children in foster homes from mistreatment at the hands of their foster parents," albeit without deciding the issue (DeShaney v Winnebago County Dept. of Social Servs., 489 US at 201 n 9; see Mark G. v Sabol, 93 NY2d at 725-726 [noting that DeShaney left the question undecided, while stating that the Court of Appeals "has never had occasion to deal with the contours of the substantive component of the Due Process Clause in the context of a child welfare case"]). Relatedly, the Second Circuit has held that a municipality may have an affirmative duty to protect an individual under the Due Process Clause even in circumstances where it only has legal, and not physical, custody of the individual (see Jacobs v Ramirez, 400 F3d 105, 106-107 [2d Cir]).
Although this federal court precedent involves a different legal context than the circumstances presented here, it nonetheless provides support for our determination that the custodial nature of the relationship between a foster care agency and a foster child is sufficient to establish a special relationship, triggering a special duty.
G. We Disagree with the First and Fourth Departments on the Application of the Special Duty Rule in These Circumstances
We disagree with the conclusions reached by the First and Fourth Departments with respect to the issue of whether and how a municipality may owe a special duty to children in the custody of one of its agencies. In Weisbrod-Moore v Cayuga County (216 AD3d 1459, 1461, lv granted 41 NY3d 908), the Fourth Department concluded, inter alia, that the "plaintiff [could not] establish the requisite special relationship between the parties based upon the [defendant's] alleged voluntary assumption of a duty that generated justifiable reliance on her part." There, the plaintiff sought damages from a municipality "as a result of sexual and physical abuse that she allegedly sustained while in foster care between 1975 and 1982" (id. at 1459). The court determined that the "plaintiff failed to set forth allegations that, if proven, would establish each of the four elements" necessary to demonstrate the existence of a special relationship (id. at 1462). We disagree. It is our position that the very nature of the parens patriae relationship between a municipal actor and a foster child in its custody, whether legal and/or physical custody, standing alone, is sufficient to establish a special relationship.
In Q.G. v City of New York (222 AD3d at 444), the First Department rejected a plaintiff's contention that a municipality "formed the required special relationship with her" "when [its agency] removed her from her home and placed her in foster care." There, the court held that the "plaintiff was required to establish the existence of a special duty in one of the three ways specified by the Court of Appeals," yet she failed to do so (id.). In reaching its conclusion, the First Department rejected its own analysis in an earlier decision, Sean M. v City of New York (20 AD3d 146), in which it held that a municipal foster care agency owed a special duty to a foster child (see Q.G. v City of New York, 222 AD3d at 444). In Q.G., the court expressed the belief that the determination of the Court of Appeals in McLean v City of New York (12 NY3d 194) warranted a reversal of its own precedent. We disagree.
Preliminarily, we note that McLean did not constitute a sea change in the manner in which the Court of Appeals analyzed the special duty rule. Instead, issued in 2009, the decision merely applied standards that had existed for many decades (see Sorichetti v City of New York, 65 NY2d 461, 468-469; De Long v County of Erie, 60 NY2d 296, 304-306; Schuster v City of New York, 5 NY2d 75, 80-84). Although the standards had long existed, the Court enunciated them together as the set of factors that courts must apply to determine the existence of a special relationship when it decided Cuffy in 1987, as previously noted (see Cuffy v City of New York, 69 NY2d at 260-261). The Court then reiterated the Cuffy factors prior to deciding McLean (see Kircher v City of Jamestown, 74 NY2d at 255-257). Since the legal standards governing McLean [*8]were already well established at the time Sean M. was decided, McLean did not set new legal precedent that required the First Department to overrule its prior decision in Sean M.
Nor did the facts of McLean support reversal of the First Department's prior determination in Sean M. In McLean, the plaintiff claimed that her daughter suffered a brain injury while in the care of a day care provider (see McLean v City of New York, 12 NY3d at 197-198). The plaintiff asserted that the City of New York's negligence caused her daughter's injury since, among other reasons, the New York City Department of Health was charged with processing applications from day care providers seeking to comply with their obligation to register with the State Department of Social Services (see id. at 198-199). The plaintiff alleged that she would not have chosen that day care provider but for its inclusion on the City-generated list (see id.). The Court of Appeals concluded that the City was entitled to summary judgment on the ground that it did not owe the plaintiff a special duty, inter alia, because the elements necessary to establish a special relationship were not present (see id. at 201-202). In contrast to the circumstances presented here, in McLean, the City was merely charged with processing day care provider registrations; it did not assume custody of the children nor assign children to day care providers, or provide any continuing supervision of those providers after placement (see id. at 197-199). Notably, in its decision in Q.G v City of New York (222 AD3d at 444), the First Department highlighted the City's lack of custody over the plaintiff's daughter in McLean. Therefore, in contrast to the First Department, we find that the material distinction between the facts of McLean and those presented here warrants a different result with regard to the special duty rule.
III. The County Failed to Demonstrate that the Governmental Function Immunity Defense Warranted Dismissal
"Even if a plaintiff satisfies their burden of demonstrating that a special duty exists, a municipality acting in a discretionary governmental capacity may rely on the governmental function immunity defense, an affirmative defense that must be pleaded and proved by the municipality" (Ferreira v City of Binghamton, 38 NY3d at 311 [internal quotation marks omitted]; see McLean v City of New York, 12 NY3d at 199-203).
"This limitation on liability reflects separation of powers principles and is intended to ensure that public servants are free to exercise their decision-making authority without interference from the courts. It further reflects a value judgment that—despite injury to a member of the public—the broader interest in having government officers and employees free to exercise judgment and discretion in their official functions, unhampered by fear of second-guessing and retaliatory lawsuits, outweighs the benefits to be had from imposing liability for that injury" (Valdez v City of New York, 18 NY3d at 76 [internal quotation marks omitted]).
"The governmental function immunity defense provides immunity for the exercise of discretionary authority during the performance of a governmental function" (Ferreira v City of Binghamton, 38 NY3d at 311 [internal quotation marks omitted]). "[T]he line separating discretionary and ministerial action may sometime blur" (Haddock v City of New York, 75 NY2d 478, 484). Nonetheless, "[a] public employee's discretionary acts—meaning conduct involving the exercise of reasoned judgment—may not result in the municipality's liability even when the conduct is negligent" (Lauer v City of New York, 95 NY2d at 99). By definition, discretionary acts can "typically produce different acceptable results" (Kralkin v City of New York, 204 AD3d 772, 773). "By contrast, ministerial acts—meaning conduct requiring adherence to a governing rule, with a compulsory result—may subject the municipal employer to liability for negligence" (Lauer v City of New York, 95 NY2d at 99). Stated succinctly, "[g]overnment action, if discretionary, may not be a basis for liability, while ministerial actions may be" (McLean v City of New York, 12 NY3d at 203).
However, "the governmental function immunity defense cannot attach unless the municipal defendant establishes that the discretion possessed by its employees was in fact exercised in relation to the conduct on which liability is predicated" (Valdez v City of New York, 18 NY3d at 76). This is due to the fact that "[t]he immunity afforded a municipality presupposes an exercise of discretion in compliance with its own procedures. The basis for the value judgment supporting immunity and denying individual recovery for injury becomes irrelevant where the municipality [*9]violates its own internal rules and policies and exercises no judgment or discretion" (Devlin v City of New York, 193 AD3d 819, 821 [citation omitted]).
Contrary to the County's contention, it failed to show, prima facie, that the relevant acts of DSS caseworkers relating to the alleged negligent placement and supervision of the plaintiff were discretionary and thus entitled to immunity (see M.S. v County of Orange, 64 AD3d 560, 562; Sean M. v City of New York, 20 AD3d at 160; Bartels v County of Westchester, 76 AD2d at 522-523). This Court has long held that the type of acts at issue are ministerial in nature, among other reasons, because they "must be accomplished in accordance with a governing rule or standard of reasonable care" (Barnes v County of Nassau, 108 AD2d at 54; see Mosher-Simons v County of Allegany, 99 NY2d 214, 220 n 4 [citing Barnes but declining to address the issue]).
Moreover, even if any of the acts at issue could potentially be discretionary, "the County's bare assertion that [its caseworkers'] conduct was discretionary was insufficient to meet its prima facie burden, as a municipality must do much more than merely allege that its employee was engaged in activities involving the exercise of discretion" (P.D. v County of Suffolk, ___ AD3d ___, 2024 NY Slip Op 03405, *4 [internal quotation marks omitted]). Similarly, "the County failed to demonstrate that [the alleged] discretion was in fact exercised in relation to the conduct on which liability is predicated" (id. [internal quotation marks omitted]).
IV. The County Otherwise Did Not Establish Its Entitlement to Summary Judgment
"[C]ounties and foster care agencies may be sued to recover damages for negligence in the selection of foster parents and in supervision of the foster home" (Keizer v SCO Family of Servs., 120 AD3d at 476). "In order to find that a child care agency breached its duty to adequately supervise the children entrusted to its care, a plaintiff must establish that the agency had sufficiently specific knowledge or notice of the dangerous conduct which caused injury" (Grabowski v Orange County, 219 AD3d at 1315 [internal quotation marks omitted]; see McCabe v Dutchess County, 72 AD3d at 151-152). In other words, the plaintiff must demonstrate "that the third-party acts could reasonably have been anticipated" (Lopez v City of New York, 172 AD3d 703, 705 [internal quotation marks omitted]). "In order to establish its prima facie entitlement to judgment as a matter of law dismissing [a cause of action] alleg[ing] that it engaged in negligent placement and supervision" of a plaintiff foster child, a defendant must "establish, prima facie, that it did not have sufficiently specific knowledge or notice of the alleged dangerous conduct which caused the [plaintiff's] injuries. In other words, the [defendant must] show that the third-party acts could not have been reasonably anticipated" (Keizer v SCO Family of Servs., 120 AD3d at 476-477 [citations omitted]; see Ogletree v Rush Realty Assoc., LLC, 29 AD3d 875, 876; Liang v Rosedale Group Home, 19 AD3d 654, 655).
Here, the County failed to meet its prima facie burden in response to the plaintiff's allegations that DSS negligently selected her foster parents and supervised her care while in their homes. Contrary to the County's contention, it failed to establish that it lacked constructive notice of the alleged conduct that resulted in the plaintiff's injuries, or that it otherwise adequately selected or supervised the plaintiff's foster care placements (see MCVAWD-DOE v Columbus Ave. Elementary Sch., 225 AD3d 845, 847-848; Kwitko v Camp Shane, Inc., 224 AD3d 895, 896; cf. Liang v Rosedale Group Home, 19 AD3d at 655-656). The County did not, for example, provide any evidence of the process it engaged in when selecting the plaintiff's foster parents, nor did it demonstrate that it engaged in reasonable efforts to determine whether the foster parents it selected were likely to provide appropriate care. Further, the County did not demonstrate that DSS's caseworkers conducted regular visits to the homes to interview the plaintiff and the foster parents (cf. Simpson v County of Dutchess, 35 AD3d 712, 713 [concluding that municipal defendants met their prima facie burden by submitting evidence regarding the process used to select the foster mother and the results thereof, and of the frequent visits municipal employees made to the home shortly prior to the subject incident, which provided "no indications of maltreatment"]). Nor did the County show that it "responded appropriately as the events unfolded" (Merice v County of Westchester, 305 AD2d 383, 384; see Sean M. v City of New York, 20 AD3d at 159-160).
V. Conclusion
The County's remaining contentions either are without merit or need not be reached in light of our determination.
Accordingly, the Supreme Court properly denied that branch of the County's motion which was for summary judgment dismissing so much of the first cause of action as sought to recover compensatory damages, and the order is affirmed insofar as appealed from.
DUFFY, J.P., MALTESE and VOUTSINAS, JJ., concur.
ORDERED that the order is affirmed insofar as appealed from, with costs.
ENTER:
Darrell M. Joseph
Clerk of the Court